### FIRST NAT. BANK OF PENN YAN *v.* MCCONNELL.

*(Supreme Court, General Term, Fifth Department. January, 1892.)*

**1. NEGOTIABLE INSTRUMENTS—ACTIONS—QUESTION FOR JURY.**
The evidence tended to show that defendant, the payee of a note indorsed by him while in his possession, and payable on or before January, 1891, surrendered it on payment thereof, October, 1890, to the maker, who, the same day, had it discounted by plaintiff bank for his own benefit, without defendant's knowledge. Plaintiff testified, however, that defendant's indorsement was made at plaintiff's request after the note was offered for discount. *Held*, that the court erred in directing a verdict for plaintiff, and in refusing to submit the case to the jury.

**2. SAME—BONA FIDE HOLDERS.**
Where plaintiff claims title, through the maker, to a promissory note indorsed by the payee, the burden is on him to show that he is a *bona fide* holder.
MACOMBER, J., dissenting.

Appeal from circuit court, Yates county.
Action by the First National Bank of Penn Yan against Eli McConnell. Defendant appeals from a judgment of the supreme court in favor of plaintiff entered upon the direction of a verdict at circuit, and also from an order denying defendant's motion for a new trial.
Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.
*Huson & Dwelle,* for appellant. *Briggs & Sunderlin,* for respondent.

LEWIS, J. The court having directed a verdict for the plaintiff, we must, in considering this appeal, give that construction to the evidence which is most favorable to the appellant. Guided by this rule, the following is a statement of the facts: The defendant Tuthill, on the 14th day of November, 1889, purchased of the appellant, McConnell, the stock of the Penn Yan Democrat Printing Company, and, in part payment therefor, gave to McConnell his promissory note, bearing date on that day, for the sum of $1,000, payable to the order of McConnell on or before January 1, 1891, with interest. Mc-

Connell indorsed his name in blank upon the note, and continued to hold and own it from the time of the execution and delivery thereof to him until the 28th day of October, 1890, when it was paid by Tuthill, and McConnell surrendered the note to Tuthill; and, when he thus surrendered it, his name was still on it.     Tuthill thereafter, and on the same day, took the note to the plaintiff's banking-house, and requested plaintiff's president, George H. Lapham, to discount the note.     Plaintiff asked Tuthill whose note it was.     Tuthill replied that it was a note he had given McConnell in payment for his printing-house stock; that it belonged to McConnell, and he had requested him (Tuthill) to see if plaintiff would discount the note for him, (McConnell.) Lapham declined to discount the note for McConnell, but offered to discount it for Tuthill; and thereupon Tuthill delivered the note to Lapham, Lapham paying him therefor the sum of $1,000, which sum he placed to the credit of Tuthill upon the books of the bank.     Tuthill had not theretofore had an individual account with plaintiff.     The proceeds of the note were checked out by the individual checks of Tuthill; three of the checks, amounting, in all, to the sum of $260, and dated, one upon the 28th of October, 1890, and the other two upon the 31st day of October, were made payable to McConnell, and were used by him.     The next check was for the sum of $100, payable to one John Young.     And on the 17th of November, 1890, the balance of the credit, $640, was drawn upon the check of Tuthill, payable to the firm of H. Tuthill & Son, of which firm Tuthill was a partner.     McConnell was at the time of the discounting of the note a resident of the village of Penn Yan.     Lapham had known him a good many years, and had frequently seen him about the streets of the village.     At the close of the evidence, both plaintiff and defendant asked for a direction of a verdict in their favor, respectively.     The defendant's request was denied, and he thereupon requested to have the questions of fact submitted to the jury.     His motion was denied, and he duly excepted. The court thereupon directed a verdict in favor of the plaintiff, to which direction the defendant excepted.

Defendant did not waive his right to have the case submitted to the jury by asking the direction of a verdict in his favor.     *Koehler* v. *Adler*, 78 N. Y. 287.     The burden of showing that it was a *bona fide* holder of the note was upon the plaintiff; it having taken the note from one who was not its apparent owner.     "An individual negotiating for the purchase of a bill or note from one having it in possession, and whose name appears upon it, must assume that the title of the holder, as well as the liability of all the parties, is precisely that indicated by the instrument; that is, he cannot assume that the person in possession has any other or different rights, or that the liability of the parties is other or different, from that which the law would imply from the form and character of the instrument."     *Bank* v. *Hammett*, 50 N. Y. 160. Lapham knew when he bought the note that it was given by the maker to the payee in part payment for property purchased.     He was informed that the maker was there, at the indorser's request, to obtain a discount of the note, for his benefit.     He declined to discount it for the indorser, but did discount it for the maker.     Having refused to deal with Tuthill as McConnell's agent, McConnell should not be held liable for Tuthill's representations to Lapham; and, if not, applying the law as stated in *Bank* v. *Hammett, supra,* plaintiff failed to make out a case.     The only principle upon which the declarations of Tuthill to Lapham can be claimed to have been admissible against McConnell is the fact that McConnell delivered the note to Tuthill with his name indorsed upon it.     The respondent's contention is that, as between McConnell and the bank, McConnell should suffer, as he put it in the power of Tuthill to deceive the plaintiff.     Whether this position can be sustained or not, it is not necessary to decide; for the only testimony as to the statements of Tuthill was given by George H. Lapham, the plaintiff's president.     He was, by virtue of his office, a financial officer of the bank.     He acted for the plaintiff in

the transaction through which plaintiff claims to own the note. His credibility was therefore a question for the jury to determine. *Bank* v. *Diefendorf*, 123 N. Y. 191, 25 N. E. Rep. 402. The fact that McConnell received from the checks of Tuthill a portion of the proceeds of the note is not significant, as there was no evidence that McConnell knew of the discount of the note by plaintiff when he accepted the check. It did appear that the property sold by McConnell to Tuthill was only partially paid for by the note in suit, and there is no evidence showing the checks were not given to pay the unpaid purchase price of the stock; but, if any inference was to be drawn from the circumstance mentioned, it should have been left for the jury to decide. It will be observed that the note was, at the maker's option, payable at any time on or before the 1st day of January, 1891. This is important, bearing upon the question of the good faith of the plaintiff in buying the note. The note was, when discounted, at the option of the maker, due. Lapham testified that, when the note was presented to him for discount, McConnell's name was not upon it, and, at his suggestion, Tuthill left the bank with the note, and in a few moments returned, with McConnell's name indorsed upon it. This was important evidence, if true. The defendant testified that his name was upon the note before it was paid by Tuthill, and before Tuthill ever had the note. This was a question for the jury to decide, and not the court.

Giving to the evidence the most favorable construction for the plaintiff, we think the case should have been submitted to the jury, and therefore the direction of a verdict was error. The judgment and order appealed from should be reversed, and a new trial granted, with costs to abide the event. So ordered.

DWIGHT, P. J., concurs. MACOMBER, J., dissents.